[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Patricia R. Jay[1], appeals, pursuant to General Statutes § 8-8, the decision of the defendant, Planning and Zoning CT Page 1128 Commission of the Town of Westport (Commission) to approve application 93-116. Application 93-116 was the Town of Westport's (Westport) request to modify the Westport owned marina known as the Compo Basin Marina (Compo Marina). The Commission approved Westport's application for a special permit and Coastal Area Management (CAM) site plan pursuant to General Statutes § 8-3(g).
The Commission's decision to grant application 93-116 was published in the Westport News on November 12, 1993. (Return of Record [ROR], Item 20, Legal Notice of Decision for Meeting of November 4, 1993.) On November 23, 1993 the plaintiff served the Commission by leaving a copy of the original citation, appeal, and recognizance with surety with both Carla Rae, the Chairman of the Commission and Georgette E. Higgs, the Assistant Town Clerk for Westport. (Sheriff's Return) On December 2, 1993, the plaintiff filed her appeal. The Commission filed a return of record on August 8, 1994. A second return of record was filed by the Commission on August 9, 1994. The plaintiff filed a brief dated June 15, 1994. The Commission's brief was filed on August 25, 1994.
On September 21, 1994, an evidentiary hearing was held at which issues of aggrievement and personal interest on the part of the Commission member, Leonard Kaminsky, were raised. The plaintiff filed a supplemental brief regarding the conflict of interest issue on October 11, 1994. The Commission filed a supplemental memorandum on October 18, 1994. The plaintiff filed reply briefs concerning the conflict of interest issue on October 18, 1994 and October 21, 1994.
By application number 93-116, Westport applied to the Commission for a special permit and CAM site plan approval for enhancements to the Compo Marina. (ROR, Item 70, Planning and Zoning Application for Coastal Area Management.) The proposed enhancements to the Compo Marina, which is located in a Residential A zone, entail expanding the facility from 286 slips and moorings to 445 slips and moorings. (ROR, Transcript: Planning and Zoning Commission's November 4, 1993 Public Hearing, p. 1.)
A public hearing was held on Westport's application on November 4, 1993. (ROR, Transcript, p. 1.) There were numerous people who spoke at the hearing both for and against the proposed expansion. (ROR, Transcript) On November 8, 1993, the Commission approved Westport's application by a six to one vote. (ROR, Item 2, Resolution of Approval of Application 93-116.) CT Page 1129
The plaintiff appeals the decision of the Commission on three grounds. The plaintiff alleges that the Commission's decision should be overturned or rendered null and void because (1) the Commission acted illegally, arbitrarily, and in abuse of its discretion in approving the expansion of the Compo Marina in that the expansion would have a detrimental effect on the community and environment; (2) the Parks and Recreation Commission, which allegedly formulated and proposed the Compo Marina expansion project, consisted of five members, all of the same political party which is in violation of the Westport Charter and General Statutes § 9-167a; and (3) certain members of the Commission allegedly had a personal interest in the expansion of the Compo Marina.
I. AGGRIEVEMENT
"Pleading and proof of aggrievement [are] prerequisite[s] to a trial court's jurisdiction over the subject matter of an appeal." (Citations omitted; internal quotation marks omitted.)DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369, 373,588 A.2d 244 (1991). "The question of aggrievement is essentially one of standing." Id. "Aggrievement presents a question of fact for the trial court." Id. "To be an aggrieved person, one must be affected directly or in relation to a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of all members of the community, and the appellant must be specially or injuriously affected as to property or other legal rights." (Citations omitted.) Smith v. Planning Zoning Board, 203 Conn. 317, 321,524 A.2d 1128 (1987).
General Statutes § 8-8(a)(1) states in relevant part that "[i]n the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, `aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes § 8-8(a)(1); McNally v. Zoning Commission, 225 Conn. 1,621 A.2d 279 (1992). As previously stated, notes in the court file indicate that during a hearing conducted on September 21, 1994, the plaintiff, Patricia R. Jay, demonstrated aggrievement by proving that she lived within 100 feet of the Compo Marina.
II. TIMELINESS
CT Page 1130
General Statutes § 8-8(b) states in relevant part that "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." General Statutes § 8-8(b).
In the present case, the Commission published notice of its decision to approve application 93-116 in the Westport News on November 12, 1993. The plaintiff commenced this appeal on November 23, 1993, by service of process on the town clerk for Westport and the chairman of the Commission. Accordingly, it is found that this appeal was commenced in a timely manner. See General Statutes § 8-8(b).
SCOPE OF JUDICIAL REVIEW
"A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulation. The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values. Acting in this administrative capacity, the zoning commission's function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied." Whisper Wind Development Corp. v. Planning andZoning Commission, 32 Conn. App. 515, 520, 630 A.2d 108 (1993), aff'd 229 Conn. 176, 640 A.2d 100 (1994). "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal."Double I Limited Partnership v. Planning and Zoning Commission,218 Conn. 65, 72, 588 A.2d 624 (1991). "On appeal, a reviewing court reviews the record of the administrative proceedings to determine whether the commission or the board has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.)Schwartz v. Planning and Zoning Commission, 208 Conn. 146, 152,543 A.2d 1339 (1988).
"The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision." Pleasant View Farms Development, Inc. v. Zoning Board ofCT Page 1131Appeals, 218 Conn. 265, 269-70, 588 A.2d 1372 (1991). "The trial court may not retry the case or substitute its judgment for that of the agency . . . ." (Internal quotation marks omitted.) Smith v.Zoning Board of Appeals, 227 Conn. 71, 80, 629 A.2d 1089 (1993). "The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached." (Citations omitted.) DeBerandinis v. ZoningCommission, 228 Conn. 187, 198, 635 A.2d 1220 (1994). "The action of the commission should be sustained if even one of the stated reasons is sufficient to support it." Id., 199. "When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision." Fernandes v. Zoning Board ofAppeals, 24 Conn. App. 49, 53, 585 A.2d 703 (1991).
"Neutrality and impartiality of members are essential to the fair and proper operation of a planning and zoning commission."Cioffoletti v. Planning and Zoning Commission, 209 Conn. 544, 553-54,552 A.2d 796 (1989). "And, of course, our statutes expressly preclude the participation of any member of a municipal planning and zoning commission in `any matter in which he is directly or indirectly interested in a personal or financial sense.' General Statutes §§ 8-11 (zoning), 8-21 (planning). We have often stated that the test for disqualification `is not whether personal interest does, in fact, conflict, but whether it reasonably might conflict.'" Murach v. Planning and Zoning Commission, 196 Conn. 192,202, 491 A.2d 1058 (1985). "The evil to be avoided is the creation of a situation tending to weaken public confidence and to undermine the sense of security of individual rights which the property owner must feel assured will always exist in the exercise of zoning power." Cioffoletti, supra, 554.
The plaintiff alleges in her appeal that the Commission's approval of Westport's application should be overturned or rendered null and void because (1) it was arbitrary, illegal and in abuse of the Commission's discretion in that the Commission did not fully consider the detrimental effects the expansion would have on the environment and the community (Count 1); (2) the Compo Marina project was allegedly formulated and proposed by the Parks and Recreation Commission which consisted of five members, all of the same political party, in violation of the Westport Charter and General Statutes § 9-167a, (Count 2); and (3) a member of the Commission who was involved in the decision to grant Westport's application allegedly had a personal interest in the expansion of the Compo Marina. CT Page 1132
A. CONFLICT OF INTEREST
It is found that the first issue that should be addressed by the court is the plaintiff's allegation of personal interest on the part of Leonard Kaminsky, a member of the Commission. As previously stated, Westport's application entailed increasing the amount of slips and moorings available at the Compo Marina. The plaintiff argues that Kaminsky, who voted in favor of the Compo Marina expansion, is on the waiting list for a slip at the Compo Marina, and for that reason has a personal interest in the approval of Westport's application.
The Commission counters, however, that Kaminsky's name on the waiting list could not have affected his role as a Commission member because (1) he already had a slip at another marina; (2) he was unaware that his name remained on the list; and (3) the Compo Marina represents a public recreational facility in which everyone, including Commission members, has an equal interest.
During the September 21, 1994 evidentiary hearing, Kaminsky testified to the following.[2] In the mid 1960's Kaminsky put his name on the waiting list at the Compo Marina. Within one year he received a mooring which he used for twenty years. In 1987 he bought a new boat and filled out a waiting list application with the Compo Marina for a slip. In 1990 the people on the waiting list were required to reapply. Kaminisky [Kaminsky] stated that his application, which indicated that he had a mooring, incorrectly requested a mooring rather than a slip. In 1991, Kaminsky was offered and accepted a slip at a different marina. Kaminsky testified that he has used this slip every boating season and is happy with it because it is close to the golf course at which he plays. Kaminsky also testified that, unbeknownst to him, his name remained on the Compo Marina waiting list despite his having acquired a slip at another marina. In November 1991, Kaminsky was elected to the Commission, and in November 1993 the Commission heard Westport's application to enhance the Compo Marina.[3]
The plaintiff claims that since Kaminsky was still on the list for a slip at the Compo Marina, he should have withdrawn himself from the hearing because he had a personal interest in approving the proposed expansion of that marina. General Statutes § 8-11
provides for the disqualification of members of a planning and zoning commission. The statute states in relevant part "No member of any zoning commission or board and no member of any zoning board CT Page 1133 of appeals shall participate in the hearing or decision of the board or commissions of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense." General Statutes § 8-11. "The decision as to whether a particular interest is sufficient to disqualify is necessarily a factual one and depends on the circumstances of the particular case." Anderson v. Zoning Commission, 157 Conn. 285,291, 253 A.2d 16 (1968). "While it is true that neutrality and impartiality of members of administrative boards and commissions are essential to the fair and proper operation of these authorities a charge of bias must be supported by some evidence proving probability of bias before an official can be faulted." Huck v.Inland Wetlands Watercourses Agency, 203 Conn. 525, 536-37,525 A.2d 940 (1987).
It is found that evidence that Kaminsky's name remained on the waiting list at Compo Marina is not sufficient to sustain the plaintiff's appeal on the ground of a conflict of interest. Kaminsky testified that he had no idea that his name remained on the list and that he was happy with the current slip he has at another marina. Given the fact that the plaintiff provided no evidence to contradict Kaminsky's testimony, the court finds that the fact that his name merely appeared on the list is not sufficient to establish a conflict of interest on the part of Kaminsky. Furthermore, the plaintiff, who has the burden of proof in this situation, has provided no evidence of bias or potential bias other than Kaminsky's name on the waiting list, which has remained there for years.
The Compo Marina is a public recreational facility much like a municipal golf course and is maintained for the entire public. Thus, Kaminsky's interest in the marina is no different than any other member of the general public and cannot be considered the type of personal interest prohibited by General Statutes § 8-11. "Local governments would . . . be seriously handicapped if any conceivable interest, no matter how remote and speculative, would require the disqualification of a zoning official. If this were so, it would not only discourage but might even prevent capable men and women from serving as members of the various zoning authorities. Of course, courts should scrutinize the circumstances with great care and should condemn anything which indicates the likelihood of corruption or favoritism. They must, however, also be mindful that to abrogate a municipal action on the basis that some remote and nebulous interest may be present would be to deprive unjustifiably a municipality, in many important instances, CT Page 1134 of the services of its duly-elected or appointed officials."Anderson v. Zoning Commission, supra, 157 Conn. 291.
 B. THE DECISION OF THE COMMISSION TO APPROVE THE APPLICATION FOR A SPECIAL PERMIT WAS NOT ARBITRARY, CAPRICIOUS, OR AN ABUSE OF DISCRETION
"A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the `conditions necessary to protect the public health, safety, convenience and property values.' General Statutes § 8-2. Acting in this administrative capacity, the board's function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied." Housatonic Terminal Corp. v.Planning and Zoning Board, 168 Conn. 304, 307, 362 A.2d 1375
(1975). The application for a special permit in the instant case is governed by sections 43 and 44 of the Westport Zoning Regulations. (ROR, Item 86, Zoning Regulations and Subdivision Regulations.) Section 44-6 of the Regulations lists factors that should be considered by the Commission in reviewing a special permit application.[4] The plaintiff, in her brief dated June 15, 1994, makes the bare assertion that the Commission ignored the standards listed in § 44-6. The plaintiff argues that the expansion of the Compo Marina will create an overly used commercial marina and diminish the view of the marina. These conclusory arguments are not sufficient to support the plaintiff's claim that the Commission's decision was arbitrary and capricious.
It is the opinion of the court that the record contains evidence that the Commission considered all of the standards listed in § 44-6. The Commission submitted the following reasons for their approval of Westport's application. "[T]he proposed use has been found to be in conformance with the Town Plan of Development which recognized the need for more recreational boating facilities; and it will 1) be in keeping with the intent of the State of Connecticut Coastal Area Management Act to locate water-dependent uses, such as marinas, in appropriate coastal areas to improve access to the water; and 2) be in conformance with the applicable zoning regulations of the Town of Westport; and 3) not prevent or inhibit the orderly growth and development of the area; and 4) not have a significant adverse affect (sic) on adjacent areas located within the close proximity to the use; and 5) not have a CT Page 1135 significant adverse affect (sic) on safety in the streets nor unreasonably increase traffic congestion in the area as demonstrated in the Traffic Report submitted by Alan Davis Associates; and 6) not have a significant adverse effect on storm drainage, the environment or other municipal facilities as demonstrated by the approvals granted by the Flood and Erosion Control Board and the Conservation Commission; and 7) be in scale with and compatible with surrounding uses, buildings, streets and open spaces since it already is a marina. 8) The need for the Marina expansion was demonstrated by the Applicant because of the significant waiting list. [and] 9) The Westport Planning and Zoning Commission has determined that this project is consistent with the policies identified in Section(s) 22a-92(b)(1) and 22-a-92(b)(2) of the Coastal Area Management Act; that it will not adversely affect adjacent Coastal resources (i.e., beaches and dunes, bluffs, and escarpments etc.) identified in Sections 22-a93 (a)(7) of said Act." (ROR, Item 2, p. 1-2.) These reasons listed by the Commission in the resolution to approve Westport's application clearly indicate that the Commission considered the standards enumerated in § 44-6. The record also includes studies and reports that the Commission relied upon in making their decision. See, e.g., ROR, Item 84, Environmental Assessment by Land-Tech Consultants, Inc. dated October 6, 1993; ROR, Item 85, Traffic Parking Report dated September 16, 1993. Thus it is found that the plaintiff has failed to show that the Commission's decision to grant the special permit application was arbitrary, capricious, or illegal.
"Courts must not substitute their judgment for that of the zoning board and must not disturb decisions of local boards as long as honest judgment has been reasonably and fairly exercised after a full hearing." Fernandes v. Zoning Board of Appeals, supra,24 Conn. App. 53.
C. THE WESTPORT CHARTER AND GENERAL STATUTES § 9-167a
The plaintiff alleges that the Westport application was formulated and proposed by the Parks and Recreation Commission, which consisted of five members all appointed by the First Selectman. The plaintiff further alleges that the all of the members of the Parks and Recreation Commission were of the same political party and therefore the Parks and Recreation Commission was in violation of the Westport Charter and General Statutes § 9-167a. The plaintiff argues that if the composition of the Parks and Recreation Commission was in violation of the Westport Charter CT Page 1136 and General Statutes § 9-167a, then the application should be invalidated thereby rendering the Commission's decision null and void.
The Westport Charter states in relevant part that "[n]o more than a bare majority of the members of an appointed Board or Commission shall be members of the same political party. Plaintiff's Brief dated June 15, 1994, citing, Westport Charter § C3-2[5]. General Statutes § 9-167a states, in pertinent part, that in a commission consisting of five members, a maximum of four of those members may be of the same political party. It is found that the question of whether the Parks and Recreation Commission consisted of five members all of the same political party is irrelevant to the instant appeal, for it is found that the Parks and Recreation Commission took no part in the formulation or presentation of application 93-116. It is found that the application was produced and submitted by the Public Works Department, the First Selectman, Doug Wood, and the Marina Advisory Committee. (ROR, Item 10, Planning and Zoning Commission Minutes of the November 4, 1993 Public Hearing.) There is nothing in the record to indicate that the Parks and Recreation Commission was involved in the creation of the application. Thus it is found that the plaintiff's claim that the application should be invalidated is without merit.
Accordingly, the plaintiff's appeal is dismissed.
RYAN, J.