## LOUIS DEBERADINIS *v.* ZONING COMMISSION OF THE CITY OF NORWALK ET AL.
### (14777)

PETERS, C. J., BORDEN, NORCOTT, KATZ and PALMER, Js.

Argued October 27, 1993—decision released January 4, 1994

*Frank W. Murphy,* with whom was *Barbara Cough-lan,* for the appellant (plaintiff).

*Peter J. Strassberger,* for the appellee (named defendant).

*David H. Wrinn,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Janet P. Brooks* and *Joseph Rubin,* assistant attorneys general, for the appellee (defendant commissioner of environmental protection).

NORCOTT, J. In this administrative appeal, a landowner contests the validity of a trial court judgment

setting aside the approval of his coastal site plan with conditions because of the statutory invalidity of one of the conditions of the approval. The plaintiff, Louis DeBeradinis, filed with the defendant zoning commission of the town of Norwalk (commission) an application for coastal site plan review[1] to allow the expansion of an existing recycling operation onto an adjoining parcel of real estate located within the Connecticut coastal area and Norwalk coastal boundary as delineated by General Statutes § 22a-94.[2] The commission approved

---

[1] General Statutes § 22a-109 provides in relevant part: "(a) A coastal site plan shall be filed with the municipal zoning commission to aid in determining the conformity of a proposed building, use, structure, or shoreline flood and erosion control structure as defined in subsection (c), fully or partially within the coastal boundary, with the specific provisions of the zoning regulations of the municipality and the provisions of sections 22a-105 and 22a-106 . . . and any regulations adopted thereunder. . . . A coastal site plan required under this section may be modified or denied if it fails to comply with the requirements already set forth in the zoning regulations of the municipality and, in addition, the coastal site plan may be modified, conditioned or denied in accordance with the procedures and criteria listed in sections 22a-105 and 22a-106. . . . Review of a coastal site plan under the requirements of this section shall supersede any review required by the municipality under subsection (g) of section 8-3 and shall be in addition to any applicable zoning regulations of any special district exercising zoning authority under special act. The provisions of this section shall not be construed to limit the authority of the commissioner of environmental protection under sections 22a-359 to 22a-363, inclusive."

[2] General Statutes § 22a-94 provides in relevant part: "COASTAL AREA; COASTAL BOUNDARY. COMMISSIONER TO PREPARE MAPS. (a) The Connecticut coastal area shall include the land and water within the area delineated by the following: The westerly, southerly and easterly limits of the state's jurisdiction in Long Island Sound; the towns of Greenwich, Stamford, Darien, Norwalk, Westport, Fairfield, Bridgeport, Stratford, Shelton, Milford, Orange, West Haven, New Haven, Hamden, North Haven, East Haven, Branford, Guilford, Madison, Clinton, Westbrook, Deep River, Chester, Essex, Old Saybrook, Lyme, Old Lyme, East Lyme, Waterford, New London, Montville, Norwich, Preston, Ledyard, Groton and Stonington.

"(b) Within the coastal area, there shall be a coastal boundary which shall be a continuous line delineated on the landward side by the interior contour elevation of the one hundred year frequency coastal flood zone, as defined and determined by the National Flood Insurance Act, as amended

the plan after a public hearing, but added six conditions including a grant by the plaintiff of an easement to provide public access along the Norwalk River. The plaintiff appealed the commission's decision to the Superior Court. The commissioner of environmental protection (commissioner), on his own motion, was made a party defendant in the appeal. The commissioner argued that a remand was necessary as a result of the commission's failure to make written findings as required by General Statutes § 22a-106.[3] The trial court retained jurisdiction over the matter, but ordered a remand "for the

(U.S.C. 42 Section 4101, P.L. 93-234), or a one thousand foot linear setback measured from the mean high water mark in coastal waters, or a one thousand foot linear setback measured from the inland boundary of tidal wetlands mapped under section 22a-20, whichever is farthest inland; and shall be delineated on the seaward side by the seaward extent of the jurisdiction of the state. . . .

"(f) A municipal coastal boundary may be adopted by the municipal planning commission of each coastal municipality in accordance with the notice, hearing and other procedural requirements of section 8-24. Such boundary may be delineated by roads, property lines or other identifiable natural or man-made features, provided such boundary shall approximate and in no event diminish the area within the coastal boundary as defined in subsection (b) and as mapped under subsection (d). Such boundary shall be sufficiently precise to demonstrate whether the holdings of a property owner, or portions thereof, lie within the boundary. Upon adoption such boundary shall be submitted to the commissioner for mapping in accordance with subsection (c). The municipal planning commission may, at its own discretion or upon request of a property owner, amend the coastal boundary in accordance with the procedures and criteria of this subsection.

"(g) All property lying within the coastal boundary shall be subject to the regulatory, development and planning requirements of this chapter."

[3] General Statutes § 22a-106 provides in relevant part: "(d) A municipal board or commission approving, modifying, conditioning or denying a coastal site plan on the basis of the criteria listed in subsection (b) of this section shall state in writing the findings and reasons for its action.

"(e) In approving any activity proposed in a coastal site plan, the municipal board or commission shall make a written finding that the proposed activity with any conditions or modifications imposed by the board: (1) Is consistent with all applicable goals and policies in section 22a-92; (2) incorporates as conditions or modifications all reasonable measures which would mitigate the adverse impacts of the proposed activity on both coastal resources and future water-dependent development activities."

limited purpose of having the defendant zoning commission submit written findings for the decision entered on the plaintiff's application." After the submission of written findings by the commission, the trial court heard the plaintiff's appeal, found that a condition imposed by the commission was illegal because it did not mitigate the potential adverse impacts of the plaintiff's plan and reversed the commission's decision to approve the plan. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm.

The relevant facts are as follows. The plaintiff owns two adjoining parcels of real estate located within the coastal boundary of the town of Norwalk. One of the lots (lot one) is located inland of the other (lot two), which fronts along the Norwalk River. On lot one, the plaintiff operates a recycling business for which he received zoning and coastal site plan approval from the commission in 1988. The operation consists of a warehouse, repair shop and rock crushing machinery. The recycling procedure involves the receipt from local contractors of blasted rock, concrete and other demolition by-products, which the plaintiff processes into crushed stone, aggregate and other usable construction materials. As part of the operation, the plaintiff also stockpiles both raw and recycled materials until they have been processed and sold. In 1990, due to decreased demand for the plaintiff's product and increased demand from local contractors for the disposal of the raw materials, the plaintiff began stockpiling materials on lot two.

In August, 1990, in order to bring the operation into compliance with the local zoning ordinances, the plaintiff filed an application for zoning approval and coastal site plan review with the commission. The plan called

for the expansion of the plaintiff's recycling operation. Specifically, the plaintiff sought approval for the temporary stockpiling of recyclable material on lot two. The Norwalk zoning enforcement officer found that this practice complied with the Industrial Zone designation of the lot and approved the use.

In a subsequent letter, the department of environmental protection (department), per General Statutes § 22a-109 (d), offered its comments and recommendations with regard to the plaintiff's application.[4] In its letter, the department noted that the expansion of the recycling operation is not a water-dependent use and suggested that it could be made water-dependent by the addition of a public access walkway running along the Norwalk River.

The commission held a public hearing[5] regarding the coastal site plan. At the hearing, the plaintiff's attorney, Kenneth Hapke, made opening and closing statements and answered questions posed by the commission. Arguing for the approval of the plan without modifications or conditions, Hapke emphasized the fact that the ongoing recycling operation is in compliance

[4] General Statutes § 22a-109 (d) provides: "A copy of each coastal site plan submitted for any shoreline flood and erosion control structure shall be referred to the commissioner of environmental protection within fifteen days of its receipt by the zoning commission. The day of receipt shall be determined in accordance with subsection (c) of section 8-7d. The commissioner may comment on and make recommendations on such plans. Such comments and recommendations shall be submitted to the zoning commission within thirty-five days of the date of receipt of the coastal site plan by the commissioner and shall be considered by the zoning commission before final action on the plan. If the commissioner fails to comment on a plan within the thirty-five-day period or any extension granted by the zoning commission, the zoning commission may take final action on such plan. Failure to comment by the commissioner shall not be construed to be approval or disapproval."

[5] General Statutes § 22a-109 (e) provides in relevant part: "The zoning commission may, at its discretion, hold a hearing on a coastal site plan required by this section."

with the zoning of lot two, the Norwalk noise ordinance and the air pollution control laws of the state. In response to the department's letter, he argued that due to issues of safety, public access to the river via lot two would be incompatible with the plaintiff's proposed industrial use. In response to a question from the commission regarding the future use of lot two, Hapke stated that "a water related use is a real possibility," but that the plaintiff had not yet settled on a firm plan. The plaintiff testified as to the specific operation of the recycling plant. He stressed the temporary nature of the use, noting that the machinery and equipment used is all portable and could easily be removed from the property. The plaintiff also offered the testimony of nine local contractors. The testimony of all nine focused on the need for a local recycling operation and the good character of the plaintiff. One attendee, Norwalk councilman Hempstead, spoke in opposition to the site plan on behalf of the residents of the neighborhood in which the plaintiff's operation is located. Hempstead voiced concerns regarding excessive levels of noise and flying dust. He also expressed concern that the proposed stockpiling had already begun without approval and that there was possible dumping in the river.

At its next regularly scheduled meeting, the commission began deliberations on the application. The commission discussed the need to make the use water-dependent as pointed out by the letter from the department and raised concerns regarding containment of the stockpiles. At this meeting, the commission voted to condition any future approval of the plaintiff's application on the provision, by easement, of a fifteen foot wide public accessway and construction of a nine foot wide earthen berm to protect the riverfront. By way of clarification, the commission decided that the easement was to be granted immediately, but that an actual walkway would not be built until sometime in the

future. At its next meeting, the commission decided to approve the plaintiff's application for coastal site plan review with six stipulated conditions, including the access easement.[6]

The plaintiff appealed to the trial court, which reversed the commission's decision. In reaching its decision, the trial court reviewed the record before the commission and concluded that it contained sufficient evidence to support the commission's finding that the potential adverse impacts of the plaintiff's proposal on future water-dependent development opportunities and activities were unacceptable. The trial court, however, also concluded, on statutory grounds, that the commission had acted illegally by conditioning the approval of the plaintiff's application on the grant of a public access easement along the waterfront because the condition did not mitigate the potential adverse impacts of the proposal. Having determined that the invalid condition was an "essential component" of the approval of the plaintiff's application, the court rendered judgment reversing the commission's decision, thereby voiding the approval of the plaintiff's application.

[6] The commission, by a four to three vote, passed the following resolution: "RESOLVED that CAM application # 17-90, L. DeBeradinis, 5 South Street, for the expansion of a rock/concrete recycling/processing operation be approved with the following conditions:

1. That a surety in the amount of $25,000 be submitted to guarantee the construction of the proposed berm and associated landscaping; and

2. That the area waterward of the berm be stabilized; and

3. That proper erosion controls be installed and maintained until the berm is stabilized; and

4. That a 15' wide public access easement acceptable to the Commission and the Corporation Council be granted along the waterfront; and

5. That the landscaping be continued along the entire length of the berm; and

6. That proper dust control measures be used to minimize any possible dust problem; and

Be It Further Resolved that the proposal complies with applicable coastal resource and use policies; and

Be It Further Resolved that the effective date of this approval shall be December 7, 1990."

The plaintiff has appealed from the judgment, claiming that the trial court improperly: (1) declined to decide whether conditioning the commission's approval of the coastal site plan on the grant of a public access easement resulted in an unconstitutional taking without compensation; (2) concluded that there was sufficient evidence in the record to support the commission's finding that the proposed use had potential adverse impacts on future water-dependent development activities; and (3) concluded that the commission's entire decision was invalidated as a result of the illegality of the fourth condition.

I

The plaintiff first claims that the trial court improperly failed to conclude that conditioning the commission's approval of his coastal site plan on the grant of a public access easement resulted in an unconstitutional taking. We disagree. The trial court properly followed " ' "the recognized policy of self-restraint and the basic judicial duty to eschew unnecessary determinations of constitutional questions." *Negron* v. *Warden,* 180 Conn. 153, 166, 429 A.2d 841 (1980).' " *State* v. *Champagne,* 206 Conn. 421, 437, 538 A.2d 193 (1988). Indeed, wherever possible, it is incumbent upon a court to consider statutory issues before reaching constitutional questions. *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 586 n.4, 590 A.2d 447 (1991).

The trial court first concluded on statutory grounds that the condition was illegal and therefore unenforceable. The power of the commission to require that the plaintiff file a coastal site plan and impose conditions on its approval is derived from the Coastal Management Act (act), General Statutes §§ 22a-90 through 22a-112. The act "delegates the administration of the state-wide policy of planned coastal development to local agencies charged with responsibility for zon-

ing and planning decisions. See General Statutes §§ 22a-105, 22a-106. The act envisages a single review process, during which proposals for development within the coastal boundary will simultaneously be reviewed for compliance with local zoning requirements and for consistency with the policies of planned coastal management." *Vartuli* v. *Sotire,* 192 Conn. 353, 358, 472 A.2d 336 (1984). Toward this end, the city of Norwalk has enacted § 118-1110 of its municipal code, which requires that for property located within the coastal boundary "[a]n application for coastal site plan review in accordance with Sections 22a-105 (c) and 22a-106 (c) of the [act], as amended, shall be filed with the Zoning Inspector in addition to an application for zoning approval, zoning variance, Special Permit or special exception." Norwalk Code § 118-1110 B (2) (b).

Once an application for coastal site plan review is filed, the zoning commission is empowered to "approve, modify, condition or deny the activity proposed . . . to ensure that the potential adverse impacts of the proposed activity on both coastal resources and future water-dependent development activities are acceptable." General Statutes § 22a-105 (e). The scope of the conditions that may be imposed by the commission is limited by the requirement that they mitigate the adverse impacts of the proposed use. General Statutes § 22a-106 (e).

The trial court held that the commission was not authorized to condition its approval of the plaintiff's coastal site plan as it did "because the condition does not mitigate the adverse impacts as required under General Statutes § 22a-106 (e)." Having found the condition unenforceable under the act, the trial court properly concluded that "the constitutional issues raised by the plaintiff need not be reached."

Although none of the parties has challenged the trial court's ruling invalidating the condition under the act, the plaintiff, nonetheless, claims that it was improper for the court not to decide his claim that the imposition of the condition resulted in an unconstitutional taking. He argues that the clear intention of the commission to reimpose the condition of a public access easement requires us to reach this issue. This claim is without merit.

Before being entitled to judicial review of his takings claim, the plaintiff has the burden of showing that he has been finally deprived by the commission of the use of his property. *Smith* v. *Zoning Board of Appeals,* 227 Conn. 71, 99, 629 A.2d 1089 (1993); *Gil* v. *Inland Wetlands Agency,* 219 Conn. 404, 415, 593 A.2d 1368 (1991). As a threshold matter, the plaintiff thus bears the difficult burden of proving that the commission will not allow any reasonable use of his property. *Gil* v. *Inland Wetlands Agency,* supra. The plaintiff has failed to cite to, and our review has failed to reveal, any evidence in the record manifesting an intent on behalf of the commission to disregard the ruling of the trial court. Although the commission may in fact impose a condition on a subsequent application, this court may not speculate as to whether or how the commission might condition its subsequent approval of a future application. Consequently, we decline, as the trial court properly did, to address the plaintiff's constitutional claim.

## II

The plaintiff next claims that the trial court improperly concluded that there was sufficient evidence in the record to support the commission's finding that the proposed use had potential adverse impacts on future water-dependent development activities. The plaintiff argues that, as a result, the commission lacked the power to impose conditions on the approval of his appli-

cation. We disagree. While it is true that the act requires a finding of adverse impact antecedent to the imposition of conditions, the plaintiff's claim must fail because, as the trial court properly concluded, there was substantial evidence in the record to support the commission's finding.[7]

With respect to review of a coastal site plan, " '[p]roceedings before planning and zoning commissions are classified as administrative.' *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission*, 212 Conn. 727, 733, 563 A.2d 1347 (1989). 'Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached. *Calandro* v. *Zoning Commission*, 176

---

[7] The commissioner argues that the commission never made a determination that there were potential adverse impacts. The commissioner relies on the language in General Statutes § 22a-106 (d), which provides that municipal boards and commissions "shall state in writing the findings and reasons for its action." The commission's written finding is inadequate, the commissioner claims, because it states that the potential adverse impacts are unacceptable, but does not specifically identify them. As a result, the commissioner argues, the case should have been remanded to allow the commission "to fulfill its statutory duty."

This claim should properly have been raised by a cross appeal. Practice Book § 4005. Although the commissioner has not filed a cross appeal, it is within the discretion of this court to address the issue despite the procedural defect. See *Prokolkin* v. *General Motors Corp.*, 170 Conn. 289, 304, 365 A.2d 1180 (1976); *DiSesa* v. *Hickey*, 160 Conn. 250, 262, 278 A.2d 785 (1971). Because the issue has been fully briefed and it appears that the parties will not be prejudiced, we consider the commissioner's claim on its merits and reject it for the following reasons. It is clear from the commission's written finding that it found potential adverse impacts. As the commissioner correctly argues, it is impossible to find that something is unacceptable without first finding that it exists. The fact that the commission did not explicitly list the potential adverse impacts found does not invalidate

Conn. 439, 440, 408 A.2d 229 (1979). The action of the commission should be sustained if even one of the stated reasons is sufficient to support it.' *Primerica* v. *Planning & Zoning Commission,* 211 Conn. 85, 96, 558 A.2d 646 (1989); see also *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 539–40, 525 A.2d 940 (1987). 'The evidence, however, to support any such reason must be substantial . . . .' *Huck* v. *Inland Wetlands & Watercourses Agency,* supra, 540. 'This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . [It] is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and

its decision. We have consistently held that it is the duty of a reviewing court to search the record before it for evidence supporting the decision of a local zoning board. *Gagnon* v. *Inland Wetlands & Watercourses Commission,* 213 Conn. 604, 608, 569 A.2d 1094 (1990); *A. P. & W. Holding Corp.* v. *Planning & Zoning Board,* 167 Conn. 182, 186, 355 A.2d 91 (1974); *Morningside Assn.* v. *Planning & Zoning Board,* 162 Conn. 154, 156, 292 A.2d 893 (1972). We recently have held that this is true where an agency is directed by statute to state its findings and reasons therefor on the record. *Samperi* v. *Inland Wetlands Agency,* 226 Conn. 579, 589, 628 A.2d 1286 (1993). In *Samperi,* we recognized that " '[c]ourts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions.' " Id., 596. Such caution is particularly appropriate when reviewing the decision of a local land use commission composed of laypersons whose procedural savoir-faire may not rise to the sophisticated level needed to achieve strict compliance with the statutory directions under which they operate. Id. This reasoning applies with equal force to the Coastal Management Act directive at issue in the present case. The commission's written finding clearly implies that it found potential adverse impacts. Such a finding satisfies the statutory directive subject to the necessity that it must be supported by substantial evidence in the record.

capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration. . . . [It] imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . [I]t is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.' (Citations omitted; internal quotation marks omitted.) Id., 541." *Property Group, Inc.* v. *Planning & Zoning Commission,* 226 Conn. 684, 697–98, 628 A.2d 1277 (1993).

Adverse impacts on future water-dependent development opportunities and activities "include but are not limited to (A) locating a non-water-dependent use at a site that (i) is physically suited for a water-dependent use for which there is a reasonable demand or (ii) has been identified for a water-dependent use in the plan of development of the municipality or the zoning regulations . . . ." General Statutes § 22a-93 (17). " 'Water-dependent uses' means those uses and facilities which require direct access to, or location in, marine or tidal waters and which therefore cannot be located inland, including but not limited to: Marinas, recreational and commercial fishing and boating facilities, finfish and shellfish processing plants, waterfront dock and port facilities, shipyards and boat building facilities, water-based recreational uses . . . *and uses which provide general public access to marine or tidal waters.*" (Emphasis added.) General Statutes § 22a-93 (16).

It is undisputed that the stockpiling of materials on lot two is a "non-water-dependent use." In order to prevail, therefore, the plaintiff must show that there is not substantial evidence in the record that the property either is suitable for a water-dependent use for which there is a reasonable demand or is identified for such use in the Norwalk plan of development.[8]

A review of the record reveals substantial evidence that the site is suitable for a water-dependent use and that there is a reasonable demand for that use. The department, in its letter to the commission, stated its opinion that the site was reasonably suited for a water-dependent use. Specifically, the department suggested that the site was suitable to provide general public access to the Norwalk River through the erection of a walkway that could easily be linked to an existing riverfront walkway located on property abutting lot two to the north.

The record also contains a list of six improved properties located along the Norwalk River, including the site abutting lot two to the north, that have provided public access to the river in order to gain coastal site plan approval. The plaintiff argues that these grants of public access do not support the commission's findings

---

[8] In its brief to this court, the commission notes that the plaintiff has admitted, both before the trial court and in the plaintiff's brief to this court, that the property is suitable for future water-dependent uses. Specifically, the plaintiff asserted that he purchased lot two in order to gain access to the water. On appeal to the trial court, the plaintiff offered the testimony of John Roberge, an engineer specializing in dredging and construction of coastal structures. Roberge testified that it was feasible to install an 800 foot bulkhead suitable for the mooring of barges capable of shipping raw and processed materials to and from the recycling operation. Furthermore, Frank Brennan, the plaintiff's real estate appraiser, testified before the trial court that the highest and best use of lot two would be the expansion of the recycling operation to include the maritime shipping component. Because we conclude that the administrative record supports the findings regarding water-dependent use, we need not consider this argument of the commission.

because they are merely examples of acquiescence by other property owners and not evidence of adverse impacts. These grants, however, do support the commission's finding in two ways. First, they are evidence that similarly situated properties are suitable for a water-dependent use. The commission could have inferred from this evidence that the plaintiff's property was also so suited. Second, they are evidence of a demand for this water-dependent use in the plaintiff's locality.

Moreover, there is substantial evidence in the record showing that the plaintiff's property has been identified for a water-dependent use in the plan of development of the city of Norwalk. The commission had before it six separate plans of development passed by the Norwalk common council and other municipal agencies dating from 1979 through 1990. These plans advocate obtaining public walkway easements from riverfront property owners to increase public access to the Norwalk River and are evidence of a longstanding plan of development contemplating the same.

On the basis of this record, we conclude that there is substantial evidence supporting the commission's finding of potential adverse impacts on future water-dependent development opportunities and activities.

III

The plaintiff next claims that the trial court improperly reversed the entire decision of the commission. He argues that the trial court should have stricken from the commission's decision the illegal condition requiring a public access easement, but permitted its approval of his application to stand. Although the imposition of an unlawful condition does not necessarily render a zoning authority's entire decision illegal and inefficacious; *Beckish* v. *Planning & Zoning Commission,* 162 Conn. 11, 18, 291 A.2d 208 (1971); where the void condition

was an essential or integral component of the zoning authority's decision it cannot be upheld. *Vaszauskas* v. *Zoning Board of Appeals,* 215 Conn. 58, 66, 574 A.2d 212 (1990). We conclude that in this case, the grant of public access was an essential and integral element of the commission's decision and that its invalidation required reversal of the entire decision.

As noted earlier in this opinion, the commission found that the plaintiff's proposal had potential adverse impacts on future water-dependent development opportunities and activities. The void condition was imposed by the commission in order to mitigate the potential adverse impacts of the plaintiff's proposal by adding a water-dependent component to the proposed use that was not water-dependent. See General Statutes §§ 22a-105 and 22a-106. None of the other five conditions imposed on the approval of the plaintiff's coastal site plan can be read as serving this purpose. See footnote 6. Under these circumstances, we cannot conclude that the commission would have approved the plaintiff's application if it had been aware that the condition it had imposed could not be enforced. The condition was, therefore, an essential component of the commission's decision. As a result, the trial court properly held that the avoidance of the condition required reversal of the commission's decision in its entirety.

The judgment is affirmed.

In this opinion the other justices concurred.