[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant proceeding is an appeal from a decision of the Newtown Zoning Board of Appeals (hereafter "ZBA") which sustains a decision of the Zoning Enforcement Officer (hereafter "ZEO") denying the appellant's application for a letter of zoning compliance pursuant to General Statutes, Sec. 8-3(f).
On June 10, 1994, and June 17, 1994, notice of the ZBA's decision was duly published in the Newtown Bee and on June 30, 1994, the appellant served the ZBA by service upon Alton Cashman, its chair, and Cynthia Curtis, the town clerk of Newtown,[1]
CT Page 5789 and the appeal was filed in court on July 1, 1994.
The property in issue is designated as lot 13, and is located at 79 Flat Swamp Road in Newtown in a R-2 zone. In the 1980's, lots 13 and 6 (the lot adjacent to lot 13) were both owned by James and Ellen Walyus. In 1984, the Walyuses applied to the ZEO for a zoning permit to build a four stall horse barn on their property. The ZEO issued a permit to build the barn and the then owners delivered the same application to the Building Department. The Building Department representatives informed the owners that the proposed location of the barn might be in violation of setback provisions unless they decided to "merge" the lots 13 and 6. There is conflicting testimony from both as to whether the Walyuses intended to merge the two lots. The map submitted with the application did not show the property line separating lots 13 and 6. The Walyuses then built the barn[2] which was located on lot 13 about 12 feet away from the property line that separated lots 13 and 6.
In due course, lot 6 was sold to John Peter Holt and Deborah F. Holt by deed dated April 26, 1990 and recorded on June 11, 1990. Thereafter, the Walyuses' mortgagee foreclosed on lot 13, which had remained in the Walyuses' possession. The Federal Deposit Insurance Corporation (FDIC)[3] eventually conveyed that lot to Thomas Neverdousky by quitclaim deed on August 23, 1993.[4] After purchasing lot 13, Neverdousky died, leaving the appellant as temporary administrator of his estate.
The appellant then requested a letter of zoning compliance in accord with Sec. 8-3(f) of the General Statutes from the ZEO which was denied on the ground that the barn on lot 13 violated local setback provisions allegedly because it was situated too close to the property line. An appeal was taken to the ZBA which unanimously upheld the decision of the ZEO. The ZBA recited that "[h]aving considered the documentation and testimony presented at a public hearing held on Wednesday, May 4, 1994, the Board voted to UPHOLD the decision of the Zoning Enforcement Officer. The Board felt that the Zoning Enforcement Officer was correct in his decision with the evidence that was available to him from the Building Department and Zoning Department records."
I. Aggrievement
"`Pleading and proof of aggrievement [are] prerequisite[s] to a trial court's jurisdiction over the subject matter of an CT Page 5790 appeal.' [Citation omitted.] The question of aggrievement is essentially one of standing." DiBonaventura v. Zoning Board ofAppeals, 24 Conn. App. 369, 373, cert. denied, 219 Conn. 903. Aggrievement presents a question of fact for the trial court.
The owner of the property is indeed an aggrieved person.Winchester Woods Associates v. Planning Zoning Commission,219 Conn. 303, 308; Bossert Corporation v. Norwalk, 157 Conn. 279,285. The appellant in his fiduciary capacity is clearly the "owner" for our purposes and aggrievement is found. The court also finds that the appeal was taken in accordance with the rules and is timely.[5] See Sec. 8-8(b) of the General Statutes. Notice of the decision was published in the newspaper on June 10, 1994. A second notice was published on June 17, 1994. The appeal was instituted on June 30, 1994 clearly within the time limited in Sec. 8-8(b).
"`In reviewing the actions of a zoning board of appeals we note that such a board is endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal. . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision. . . . In an appeal from the decision of a zoning board, we therefore review the record to determine whether there is factual support for the board's decision, not for the contentions of the applicant.'" Francini v. Zoning Board ofAppeals, 228 Conn. 785, 791. "`The trial court may not retry the case or substitute its judgment for that of the agency. . . .'"Smith v. Zoning Board of Appeals, 227 Conn. 71, 80. "The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached." (Citations omitted.) "The action of the commission should be sustained if even one of the stated reasons is sufficient to support it." DeBeradinis v. Zoning Commission,228 Conn. 187, 198-199. "If the [zoning] board fails to give the reasons for its actions, or if its reasons are inadequate, the trial court must search the record to determine whether a basis exists for the action taken." Stankiewicz v. Zoning Board ofAppeals, 15 Conn. App. 729, 732.
The appellant argues that Sec. 8-13a of the General Statutes protects the barn as a valid nonconforming building because the town failed to take any action within the required three year statutory period to correct the barn's noncompliance with local CT Page 5791 setback provisions. The ZBA would refute that premise by asserting that lots 6 and 13 were merged at the time that the Walyuses built the barn and that the sale of lot 6 in 1990, without authorization from the town to redivide the lots, was illegal. Therefore, the appellant should not be allowed to avail himself of the protection of Sec. 8-13a because he was made aware by the town of the potential problem of the barn's location. The ZBA concludes by saying that if Sec. 8-13a is found to be applicable to the present appeal, its three year limitation should not commence until the ZBA has actual notice of the nonconformance.
The cited statute recites that "[w]hen a building is so situated on a lot that it violates a zoning regulation of a municipality which prescribes the location of such a building in relation to the boundaries of the lot or when a building is situated on a lot that violates a zoning regulation of a municipality which prescribes the minimum area of the lot, and when such building has been so situated for three years without the institution of an action to enforce such regulation, such building shall be deemed a nonconforming building in relation to such boundaries or to the area of such lot, as the case may be."
The parties have offered varying testimony at the ZBA hearing as to whether lots 13 and 6 were merged when the Walyus family applied for a permit to build the four stall horse barn. In support of the argument that the two lots had been merged, the ZEO testified that (1) it was his understanding that the Walyuses intended to merge the two lots; (2) the Walyuses provided him with an A-2 survey showing no property line between lots 6 and 13 and a total acreage of 4.97 (the total acreage of lots 6 and 13 combined); and (3) the Walyuses were aware that the proposed location of the barn was too close to the property line separating lots 6 and 13 if they did not merge the two lots. The appellant claims as argument that the two lots had not been properly merged. The ZBA heard testimony at the hearing stating that (1) the A-2 survey had never been properly filed with the land records; (2) the assessor's records showed that lots 6 and 13 were two separate building lots; and (3) that taxes had always been paid all along on two lots. It is apparent from the record that the members of the ZBA found that the testimony and documentation presented at the hearing supported the conclusion that the two lots had been merged by the Walyuses. The court will not disturb that finding because such a finding is supported by the record. CT Page 5792
Nevertheless, the finding that the two lots may have been merged is not dispositive of this appeal. The record clearly indicates that lot 6 was sold to the Holts by deed dated April 26, 1990, and recorded on June 11, 1990. Regardless of whether the two lots had been previously merged while under the ownership of the Walyuses, once lot 6 was conveyed to the Holts, the four stall horse barn on lot 13 no longer conformed with the applicable setback provisions. Furthermore, the record shows no evidence that the ZEO or any other official instituted any action to remedy this situation. The appellant sought to have the barn considered a nonconforming use and building after a period in excess of three years had passed. The ZEO therefore incorrectly denied the letter of zoning compliance.
Once again, the ZBA in its brief argues that Sec. 8-13a is not applicable because the sale of lot 6 in 1990 was illegal and that the statute was not designed to allow a nonconforming use or building to be created by subterfuge. Whether the redivision of lots 13 and 6 was illegal does not change the fact that as soon as lot 6 was sold, the barn no longer conformed with the applicable setback provisions. There is no reason why Sec. 8-13a
would not apply to this now nonconforming use (barn). The ZBA has failed to provide the court with any case law or other support for the argument regarding the illegality of the redivision of the two lots. Since the town officials failed to take any action to remedy this situation for more than three years, as required under Sec. 8-13a, the four stall horse barn became a valid nonconforming use (building).
The ZBA continues by arguing that if Sec. 8-13a does apply, since the town officials were unaware of the redivision of lots 13 and 6, the three year limit should not start running until the town has notice of the nonconformance. There is no language in the statute, however, to indicate that in order to commence the running of the three year period, the town must be aware of the nonconformance. The legislative history of this statute reveals that the legislature's stated intent was to have the statutory period run from the time the nonconformity came into existence as opposed to when the ZEO became aware of the nonconformance.[6]
Thus, the statute would have the added benefit of keeping the ZEO "on his toes".
The record supports the fact that the four stall horse barn on lot 13 has violated the setback provisions of Newtown for at CT Page 5793 least three years and that, in accordance with Secs. 8-3(f) and8-13a, the appellant was indeed entitled to his letter of zoning compliance.
The appeal is, accordingly, sustained.
Moraghan, J.