[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is one of four appeals from the action of the Watertown Planning Zoning Commission (hereinafter Commission) in CT Page 7898 connection with certain amendments to the zoning regulations that were approved on November 12, 1997. The court heard oral argument on all of the cases on the same day and will issue its opinions on each case today. Many of the facts as to the action of the Commission and the record in general is the same in all of the cases and therefore the court will not repeat in each opinion the findings or observation made but will incorporate by referenceSarlom v. Watertown Planning Zoning Commission, Superior Court, judicial district of Waterbury, Docket No. 143368 (May 19, 1999,Pellegrino, J.) where appropriate.
 THE COMMISSION'S ACTION
The Commission sought to amend its zoning regulations pertaining to its business districts. When a zoning commission acts to amend its regulations, it acts as a legislative body.First Hartford Realty Corp. v. Planning Zoning Commission ofthe Town of Bloomfield, 165 Conn. 533, 540, 338 A.2d 490 (1973) "The test of the action of the commission is two-fold: (1) The zone change must be in accord with a comprehensive plan. and (2) it must be reasonably related to the normal police power purposes enumerated in [General Statutes §] 8-2. . . . A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties. . . . The requirement of a comprehensive plan is generally satisfied when the zoning authority acts with the intention of promoting the best interests of the entire community. . . ." (Citations omitted.) Id., 541. In reviewing the action of the commission on appeal, the question for the court is whether the decision is supported by the record.
On November 12, 1997 the Commission voted to amend its regulations regarding the permitted size of retail businesses in all business zones. In the Central Business District (B-C) the permitted use was reduced from a Gross Floor Area ("GFA") of 20,000 sq. ft. to a maximum GFA of 10,000 sq. ft. with a special permit use from over 20,000 sq. ft. to a maximum of 20,000 sq. ft. For the Shopping Center Business District (BSC), a permitted use was reduced from an unlimited GFA to a maximum GFA of 20,000 sq. ft., and in the General Business District (B-G), a permitted use was reduced from a unlimited GFA to maximum GFA of 10,000 sq. ft. and a special permit use to a maximum GFA of 20,000 sq. ft. The Commission held a public hearing on November 12, 1997 and voted to adopt the proposed changes. Notice of the decision of CT Page 7899 the Commission was published in the Waterbury Republican-American on November 14, 1997, to take effect on November 17, 1997.
 SEALY'S CLAIM
The plaintiff, Sealy, owns property in the Central Business District (B-C) and argues that the Commission acted illegally and in the abuse of its discretion because it did not state its reasons on the record; did not consider the comprehensive plan; the decision bears no relation to the exercise of police powers; the commission was predisposed; the amended regulations were unconstitutionally vague; and finally that its decision constituted a taking. In this case, as well as the other appeals, the court must first decide the issue of aggrievement in order to acquire subject matter jurisdiction. Jolly, Inc. v. BridgeportZoning Board of Appeal, 237 Conn. 184, 676 A.2d 831 (1996); Wallsv. Planning Zoning Commission, 176 Conn. 475, 408 A.2d 252
(1979). The defendant in this case, as in the other matters, has stipulated that there is aggrievement and therefore the court will find, based on the stipulation of both parties, that the plaintiff is aggrieved.
 DISCUSSION
I. Reasons on the Record
Similar to the other plaintiffs in these related appeals, Sealy claims that the Commission did not state the reasons for its approval of the amended regulations on the record. The law is very clear that the Commission does not have to state its reasons on the record. "It is the duty of a reviewing court to search the record before it for evidence supporting the decision of a local zoning board. . . ." DeBeradinis v. Zoning Commission,228 Conn. 187, 198 n. 7, 635 A.2d 1220 (1994). "In [Samperi v. InlandWetlands Agency, 226 Conn. 579, 628 A.2d 1286 (1993)], we recognized that [c]ourts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions. . . . Such caution is particularly appropriate when reviewing the decision of a local land use commission composed of laypersons whose procedural savoir-faire may not rise to the sophisticated level needed to achieve strict compliance with the statutory directions under which they operate. . . ." (Citations omitted; internal quotation marks omitted.) DeBeradinis v. ZoningCommission, supra, 228 Conn. 198 n. 7. CT Page 7900
"In Parks v. Planning Zoning Commission, 178 Conn. 657,661-62, 425 A.2d 100 (1979), [we] said that [t]he (planning and zoning] commission's failure to state on the record the reasons for its actions, in disregard of General Statutes § 8-3, renders appellate review more cumbersome, in that the trial court must search the entire record to find a basis for the commission's decision. . . . [W]e further stated that [i]f any reason culled from the record demonstrates a real or reasonable relationship to the general welfare of the community, the decision of the commission must be upheld. . . ." (Citations omitted; internal quotation marks omitted.) Paige v. TownPlanning Zoning Commission, 235 Conn. 448, 464, 668 A.2d 340
(1995).
The court has reviewed the record and finds the decision is supported by substantial evidence. The minutes of the July 23, 1997, meeting show that traffic was a topic of concern. Specifically, there was a discussion regarding large stores as considerable traffic generators. "Mr. Adams commented that with anything over 20,000 sq. ft., you are going to [need to] control the type of traffic generated and the types of uses so that you don't end up with large traffic generators. . . ." (Record #2, p. 3.) Two other members of the Commission agreed. (Record #2, p. 3.) A regulation limiting the floor size of commercial buildings was a method the Commission proposed to control traffic and congestion. There were also concerns regarding the number of parking spaces allowed per building and the estimated traffic. (Record #2, p. 3.) Such concerns also included local street impact within a half mile radius. (Record #2, p. 4.) In regard to the amount of retail activity allowed, the planning and zoning official stated that "retail usually generates more traffic. . . [and that she was thinking] in traffic generation terms." (Record #2, p. 5.)
At the hearing held on November 12, 1997, the people in attendance supported the concept of limiting square footage allowances. Joseph Masi, a former member of the Commission, agreed that regulating the size of stores would preclude "megastores that cause all kinds of environmental impact problems." (Record #13.) Mr O'Sullivan testified that it would be an "overall improvement to the main corridor" of Town that they attempt to not have very large development in the commercial area with the associated traffic. (Record #13.) There were no members of the general public in attendance that spoke against the CT Page 7901 proposed regulations. It is clear from the comments made by the commissioners at the special session, the meeting of the Commission that was held after the public hearing, that they supported the proposed regulations because they were designed to reduce traffic and benefit the Town of Watertown in general. The chairperson, Ms. Wick, commented that "as brought out in the public discussion" the Commission is trying to bring back the Main Street community feel instead of development by the automobile. (Record #14.) Commissioner Adams commented that he was one of the biggest advocates of proposals because the big stores and the "magnets" that they draw cause a blighted downtown. He commented on the traffic congestion and wondered whether the area affected by the regulations should be expanded. (Record #14.) Commissioner Gallo supported the amendments because he did not want developers to come in and "complicate our traffic situation even more." (Record #14.)
"An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . ." (Citations omitted.) New England CableTelevision Assn. v. Dept. of Public Utility Control,247 Conn. 95, 118, ___ A.2d ___ (1998). "Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred . . . Such a standard of review allows less room for judicial scrutiny than does the "weight of the evidence' rule or the "clearly erroneous' rule. . . ." (Citations omitted; internal quotation marks omitted.) Connecticut Light Power Co. v. Dept. of PublicUtility Control, 216 Conn. 627, 639-40, 583 A.2d 906 (1990)
The court after reviewing the record finds that there is substantial evidence to support the approval of regulations.
II. Comprehensive Plan
The plaintiff argues that the proposed change does not conform to the comprehensive plan. The plaintiff acknowledges that the defendant town has no "comprehensive plan" as such but that the regulations must conform with the policy and objectives contained in the regulations. The plaintiff then cites the purpose stated in the town's regulations, which clearly speaks to "the sound interrelationship of buildings to open space, pedestrian and vehicular circulation." (Plaintiff's Memorandum, dated July 13, 1998, p. 19). The minutes of the meeting may not have made any reference to Section 31 of the zoning regulations, CT Page 7902 which contained the language cited above, but the discussion at the meeting on November 12, 1997, was replete with discussion of traffic. See Section I, supra. The regulation of traffic is a legitimate concern of the Commission. Protect Hamden/North HavenFrom Excessive Traffic Pollution, Inc. v. Planning ZoningCommission, 220 Conn. 527, 600 A.2d 757 (1991)
The amendments support the comprehensive plan, which in this case is found in the zoning regulations themselves. Article I of the regulations states the intent and purpose of the regulations. The objectives as stated in Section 1 include, inter alia, the prevention of overcrowding of the land and the avoidance of an undue concentration of population; the protection and conservation of "the character, the environment and the social and economic stability of all parts of the Town"; the encouragement of "the orderly and beneficial development of the Town" . . . and the promotion of "the most beneficial relationship of streets and traffic circulation throughout the Town and the arrangement of land uses, having particular regard for the minimizing of congestion in the streets and the promotion of safe and convenient vehicular and pedestrian access appropriate to the various uses throughout the Town. . . ." (Record #19, pp. 1-2.)
The stated purposes of the various business districts are the following: "To encourage the orderly development of a shopping area for the Town which provides the opportunity for creative and flexible architectural design, the sound interrelationship of buildings and open spaces, pedestrian and vehicular circulation, landscaping, parking areas and business uses and to carry out the recommendations and proposals for circulation and use contained in the duly adopted plans and policies of the Commission"; (Record #19, Section 31 — Central Business B-C District, p. 63); "to accommodate retail stores and service establishments primarily serving the neighborhood needs of Town residents"; (Record #19, Section 32 — Local Business B-L District, p. 66); "to accommodate unified development of planned commercial facilities to serve a local and regional market"; (Record #19. Section 33 — Shopping Center Business B-SC District, p. 69); and "to accommodate larger retail and service establishments primarily serving the needs of the entire Town and neighboring communities." (Record #19, General Business B-G District, p. 71.)
There is ample evidence in the record demonstrating that the amendments are consistent with the comprehensive plan. The record illustrates concerns regarding, traffic, congestion, and the CT Page 7903 impact of stores exceeding 10,000 square feet, particularly with regard to parking. (Record #2.) The comments from members of the public demonstrate the desire to maintain the community character in Watertown by protecting the appearance of commercial areas, providing for sidewalks, and limiting commercial activity through maximum square footage requirements that could lead to urban blighted areas. (Record #13.) These concerns fit within the stated purposes of the zoning regulations. Thus, the court finds that there is ample evidence in the Record to find that the amendments are consistent with the comprehensive plan.
III Predisposition, Taking Vagueness
The issues of predisposition and taking were discussed inSarlom v. Watertown Planning Zoning Commission, supra, Superior Court, Docket No. 143368, and are incorporated by reference.
The plaintiff argues that the zoning amendments are unconstitutionally vague. The burden of proving that the regulations are "impermissibly vague as applied to the facts" of this particular case rests with the plaintiff. Felsman v. ZoningCommission, 31 Conn. App. 674, 681, 626 A.2d 825 (1993) "It is well established that, as a general rule, the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue. . . ." (Citations omitted; internal quotation marks omitted.) Spero v. Zoning Board of Appeals, 217 Conn. 435, 446,586 A.2d 590 (1991) (noting that generally the constitutionality of zoning regulations is addressed in independent proceedings, such as declaratory judgment actions)
In this case the plaintiff argues that the new Section 31.5[1] that requires the 20,000 sq. ft. floor area to include "outdoor display" is unclear. (Plaintiff's Brief, dated June 13, 1998, p. 25.) It argues, "the purpose of the section is wholly unclear. The new section does not indicate what is allowed or prohibited, or to what this limitation pertains." (Plaintiff's Brief, dated June 13, 1998, pp. 25-26.) However, the proposed text amendments expressly direct that the new Section 31.5 is to be added to Section 31, Central Business District B-C District "Special Permit Uses." (Record #4; Record #15.) The new section is included under Section 31.3 Special Permit Uses, which provides in pertinent part, "[t]he following uses shall be permitted subject to Special Permit and Site Plan CT Page 7904 approvals. . . ." The amendments expressly state "Add New Section — Section 31.5 Stores or shops for the conduct of retail business with a maximum gross floor area of 20,000 sq. ft. for retail business including outdoor display, if any." (Record #4; Record #15.) The purpose of the regulation is clear; a retail store with a maximum of 20,000 square feet, which includes any outdoor display, is a permitted use, subject to special permit and site plan approvals. (See Record #15; Record #19.)
It is clear to the court that the amendment is meant to be included under the special permit uses of Section 31.3. Common sense must be employed in construing the words of a regulation.Smith v. Zoning Board of Appeals, 227 Conn. 71, 92, 629 A.2d 1089
(1993), cert. denied, 510 U.S. 1164 (1994). The plaintiff failed to meet its burden of demonstrating that the regulations as applied to these facts are vague or unascertainable.
 CONCLUSION
For the aforementioned reasons, the appeal is dismissed.
PELLEGRINO, J.