[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff East Wintonbury Hill, LLC, appealed the decision and order of the Town of Bloomfield Fair Rent Commission ["Commission"]. The appeal claimed the following: 1) That the Commission had violated its own codes and regulations when it ordered a phase in of the proposed rental increase thereby depriving the plaintiff of fair value of the income from CT Page 2890 the rental increase; 2) That the Commission acted arbitrarily and capriciously and abused its discretion, when it found the proposed rental increase to be fair and at market value and yet ordered a phase in; 3) That the Commission subjected the phase in to inspections and remedies contrary to the town code; 4) That the Commission was not properly constituted because it had an insufficient number of members; 5) That the Commission acted improperly by requiring an inspection of all of one hundred and seventeen apartments in the complex although only forty-nine apartments were subjected to the proposed rental increase; and 6) the Commission's decision was based on consideration of evidence not in the record.
The Court has reviewed the minutes and the transcript from the hearing. The relevant procedural history and facts are as follows: By letter dated November 7, 1998 some of the tenants filed a complaint with the Commission concerning a proposed rental increase. The plaintiff proposed an increase for a two bedroom apartment to $725.00 from $573.00 and for a three bedroom apartment to $870.00 from $663.00.
On December 1, 1998[1] the Commission held a special meeting. Present at the meeting were three members of the Commission, the Town Attorney and Executive Assistant. Several tenants spoke at the meeting. The Commission set another hearing date for December 16, 1999.[2]
On December 16, 1999, the Commission held a hearing. Present at the hearing were the four members of the Commission, the Town Attorney, the Executive Assistant and the Director of the West Hartford/Bloomfield Health District, who is an ex-officio member of the Commission. Also noted as present were the attorney representing the tenants and the attorney representing the plaintiff.
Counsel for the Commission informed the Commission that their authority was found in C.G.S. 7-148 (b) et seq., and Town Code § 12-38 which outlined the circumstances to be considered in determining whether the proposed rental increase was excessive.
§ 12-36 states that the Commission shall consist of five members. The attorney for the plaintiff questioned whether the Commission could act with only four members. Counsel for the Commission informed those present that only four members had been appointed to date. Both the attorney for the plaintiff/landlord and the attorney for the tenants waived any objections to having the four members make a decision.
The attorney for the plaintiff/landlord was ready to present evidence. The attorney for the tenant was not ready, as he had been retained just six days earlier. Plaintiff's attorney did not object to a delay but CT Page 2891 wanted rents to be paid. The Commission's attorney asked counsel for the plaintiff and the tenants to work out the details of the rent payment. The Commission's attorney notified the tenants that if they believed that they had a potential health code issue, the health district was prepared to conduct inspections of the apartments. Attorneys for the plaintiff/landlord and the tenants agreed to share inspection requests with each other and file them with the commission by the close of business on December 23, 1998.[3]
The Commission conducted an evidentiary hearing at a special meeting on March 9, 1999. Present at the meeting were the four members of the Commission, the town attorney, the executive assistant, and the executive director of the West Hartford/Bloomfield Health District. Also present were tenants and their attorney, the attorney for the plaintiff/landlord and the property manager for the plaintiff/landlord.
At the hearing several tenants discussed problems which could be characterized as maintenance problems, such as peeling paint and general disrepair. However, several tenants also described problems which could be characterized as relating to health and safety. These problems included flooded basements with standing water, cracked bathroom ceilings, missing rail on steps, leaks in the pipes and electricity and electrical outlets.
Several tenants also talked about the proposed rental increase to $725.00 for a two bedroom apartment and $870.00 for a three bedroom apartment. There was an additional $5.00 per month charged for hot water.
The plaintiff presented evidence of market survey of comparable apartment complexes showing amenities, utilities, square footage and other comparable points. The plaintiff also presented a summary of market rent adjustments and unit analysis. The property manager for the plaintiff/landlord explained that the apartment complex was previously HUD subsidized but now only sixty-seven units would be subsidized. The units would be repaired to become fair market units and some money had been set aside to refurbish those units that were not to be convened to fair market units.
The property manager discussed some of the items that had been listed in the Health District report. The plaintiff had received the report prior to the hearing and it was offered into evidence. The property manager pointed out that some (but not all) of the problems had been caused by the tenants, that some of the items on the list were handled on a regular cycle, and that the last rental increase was in 1991.
The property manager acknowledged the problem with the flooded basement CT Page 2892 and explained that the complex never had problems with flooded basements until the church was built. The plaintiff had installed sump pumps in some of the basements in an effort to correct the problem. The on-site superintendent described some of his duties relating to the cleaning, draining and monitoring of the sump pumps.
Plaintiff's counsel represented that after receiving a copy of the inspection report, the plaintiff had set up a program to inspect the apartments and make needed repairs, and that the management intended to correct code violations.
The attorney for the tenants stated several things on behalf of the tenants including that the proposed rental increase was `dramatic'. He requested that the proposed increase be phased in and linked to repairs and renovations.
The attorney for the plaintiff/landlord represented that the complex was twenty-five years old, the management company was committed to making the corrections noted by the Health District, and that they had attempted a phase-in of the proposed increase including a reduction of the market rate by $50.00 for current tenants.[4] The property manager had also mentioned the $50.00 reduction for long term tenants.
The Commission held a meeting on March 11, 1999 to consider and render a decision on the complaints filed. Counsel for the Commission reminded the members that the decision must be based on Town Code Section 12-38
and read the section to the Commission. Counsel also informed the Commission that there were thirteen criteria to be considered, and the decision could be based on any or all of the thirteen. The Commission must take into account the information presented at the public hearing, and any comments must be addressed to the testimony and the criteria listed in the ordinance. The vice chair person referenced the hearing on December 16, 1998 and March 9, 1999. She stated that based on the length of time since the last increase and a comparison of the age, square footage and other similarities with other complexes the base rented appeared to be fair. The vice chairperson also stated that the plaintiff/landlord had recognized longer term tenants by reducing the proposed rental increase of $795.00 for a two bedroom apartment to $730.00 and the proposed increase of $900.00 to around $875.00.
The vice chairperson stated that the increase ranged from $30.00 to $212.00 with an average increase of $195.00 per month. She also stated that it was a steep increase and that the appropriate solution would be to phase in the proposed increase and tie it to the correction of various code infractions as identified by the Health District. Some of the violations had already been discussed at the hearing on March 9, 1999. CT Page 2893 The plaintiff/landlord had already agreed to address the code violations.
Two other Commissioners agreed with the vice chairperson. The remaining members stated that the proposed increase is proper but based on various violations and problems that need to be corrected over a period of time, and phased in after the problems have been corrected.
Counsel for the Commission summarized the comments of the members of the Commission as follows: There was a common belief that there should be a phase in of the proposed increase, that the increase would be tied to the correction of health code violations, and that the corrections would have to be certified by the Health Department. Counsel identified the applicable authority as Section 12-38 (1)(2)(5) as to comparison with other complexes, § 12-38 (6) as to repair § 12-38 (8) as to repairs and compliance with ordinances and health codes and §12-38 (12) as to frequency of increases.
There was further discussion among the members as to when the phase in would start, giving the plaintiff/landlord some time to correct the code violations, and which tenants would be covered by the Commission's order.
The Commission issued the following order, which was forwarded to the plaintiff/landlord:
1. That the West Hartford/Bloomfield Health Department inspect the remaining units in the complex and present its report of funding to the town manager. The Health District will make every effort to inspect all units based on the approval of each tenant. The landlord is directed to address and correct all code violations which fall under the landlord's jurisdiction. Emergency related code violations will be addressed immediately.
2. Upon satisfactory completion of correcting each unit's landlord related code violations, the landlord will immediately phase-in one half of the proposed rent increase.
3. One year from the date of the first phase in, the landlord may initiate the second half of the rent increase.
4. If a tenant declines admission of the Health District, the landlord will immediately impose one hundred percent (100%) of the rent increase.
5. The order applies to those tenants in possession as of November 7, 1998. CT Page 2894
By letter dated June 7, 1999 the tenants notified the Commission that the plaintiff was seeking an increase to $795.00 for a two bedroom unit and $900.00 for a three bedroom unit. The tenants believed the Commission had approved $725.00 for a two bedroom apartment and $870.00 for a three bedroom apartment.
On April 11, 1999, the plaintiff/landlord filed an appeal of the Commission's decision and order of March 11, 1999. The increased rental amounts were not stated in the appeal.
On June 30, 1999, the Commission held a meeting to clarify the amount of the rental increase that it had approved. Present at the meeting were three members of the Commission, counsel for the Commission, the executive assistant, the Executive Director of the Health District and a health inspector. Also present were counsel for the plaintiff/landlord and counsel for the tenants.
Counsel for the Commission informed those present that the only item on the agenda was the clarification of the amount approved for the rental increase. The chairperson referred to the minutes of the meeting and her notes. She stated that the amount approved was for $725.00 and $875.00 and a $5.00 additional charge for hot water. The other members agreed.
On November 17, 1999, the plaintiff/landlord filed an amended appeal to reflect its objection to the meeting of June 30, 1999, which clarified the order of March 11, 1999.
 DISCUSSION
The issue presented on appeal is whether the Commission acted outside of its statutory authority and in an arbitrary and capricious manner.
RENTAL INCREASE
C.G.S. 7-148b authorized the Town of Bloomfield to create a fair rent commission to "make studies and investigations, conduct hearings and receive complaints relative to rental charges on housing accommodations . . . within its jurisdiction in order to control and eliminate excessive rent charges on such accommodations. . . ."
C.G.S. 7-148c provides that "in determining whether a . . . proposed increase in a rental charge is so excessive, with due regard to all the circumstances as to be harsh and unconscionable", the Commission shall consider any or all of the thirteen circumstances outlined in reaching the decision. The criteria includes a comparison with other similar CT Page 2895 accommodations 7-148c (1), needed repairs, 7-148c (6), whether the accommodations are in compliance with the ordinances of the municipality and the general statutes relating to health and safety, 7-148c (8) and the amount and frequency of increases in rental charges 7-148c (12).
C.G.S. 7-148d provides that ". . . if a Commission determines, after a hearing, that the housing accommodation fails to comply with any municipal ordinance or state statute or regulation relating to health and safety it may order the suspension of further payment of rent by the tenant until such times as the landlord makes the necessary changes, repairs or installations so as to bring such housing accommodation into compliance with such ordinance, statute or regulation. The rent during said period shall be paid to the Commission to be held in escrow subject to ordinances or provisions adopted by the town, city or borough.
Pursuant to the town code § 12-36, the Town of Bloomfield created a fair rent commission which shall consist of five electors or taxpayers. § 12-37 outlined the Commission's duties and powers and, § 12-38
outlined the circumstances to be considered in "determining whether a proposed rental increase is excessive, and § 12-39 outlines the actions the Commission may take if it determines that the housing accommodation fails to comply with any ordinance of the town. The town code § 12-36 through § 12-39 mirrored C.G.S. 7-148b through 7-148d.
A trial court may grant relief in an appeal from a decision of an administrative authority, only when the authority has acted unreasonably, illegally or arbitrarily or has abused its discretion.Smith v. Zoning Board of Appeals, 227 Conn. 71, 80, 629 A.2d 1089
[1993]. Decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing.Young v. Town Planning and Zoning Commission, 151 Conn. 235, 245,196 A.2d 427 (1963). Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons . . . Whittaker v. ZBA of the Town ofTrumbull, 179 Conn. 650, 654 (1980), Willard v. Zoning Board of Appeals,152 Conn. 247, 248-49, 206 A.2d 110 (1964). The burden of proof to demonstrate that the board acted improperly is upon the plaintiff.Howarth v. Zoning Board of Appeals, 163 Conn. 609, 316 A.2d 418 (1972).
Although the court may not substitute its own conclusions for those of the Commission it retains the ultimate obligation to determine whether the action was unreasonable, arbitrary, illegal or an abuse of discretion. United Parcel Service, Inc. v. Administrator, 209 Conn. 381,385-86, 551 A.2d 724 (1988). The court simply determines whether the record reasonably supports the conclusions reached by the agency.DeBeradis v. Zoning Commission, 228 Conn. 187, 198, 635 A.2d 1220
CT Page 2896 (1994).
The plaintiff argues that the Commission did not act in accordance with its authority when it found the proposed increase to be fair and then ordered a phase in of that increase. The plaintiff also argues that if the Commission had found that there were health and safety violations, the Commission was only authorized to suspend the rental payments, order them paid to the Commission and held in escrow subject to compliance.
A review of the record C.G.S. 7-148 et seq. and Town of Bloomfield Code § 12-36 et. seq. shows that the Commission is vested with broad powers. These powers include conducting hearings relative to complaints about rental charges.
The Commission conducted a full hearing. The plaintiff and the tenants were represented by counsel. They waived any objections to the composition of the Commission, which at that time only had four members appointed. The plaintiff and the tenants presented evidence. The Commission also received evidence from the Health District relative to health code violations at the plaintiff's apartment complex.
The plaintiff represented that a program had been set up to inspect the apartments and make needed repairs. The plaintiff also represented that it intended to correct any code violations and that it had attempted its own phase in of the proposed rental agreement.
The Commission considered all the evidence presented and the following criteria in § 12-38 subsections 1, 2, and 5 comparison to other complexes; subsection 6 in reference to needed repairs; subsection 8 relating to compliance with the town code and state statutes relative to health and safety; and subsection 12 in reference to the amount and frequency of increases in rental charges.
After a full hearing, and consideration of the evidence and criteria, the Commission made a ruling and issued an order as to the proposed average rental increase of $195.00. The Commission commented that the proposed increase was steep, that it was fair and it would be appropriate to phase in the increase and tie in the correction of the various code infractions as identified by the Health District.
The Commission therefore acted within the scope of its authority when it found the proposed increase to be fair, subject to the correction of the code violations and to a phase in of the steep increase.
SUSPENSION OF PAYMENTS
CT Page 2897
§ 12-29 provides that the Commission may suspend rental payments, and if they do then the payments must be held in escrow. The provision allows the Commission in the exercise of its discretion to suspend the rental payments. However, it does not mandate the suspension. What is mandated is payment to the Commission, and the payments held in escrow, if there is a suspension of payments.
In this case the Commission ordered a phase in of the rental increase over a period of two years. One half would go into effect when the code violations were corrected and the second half one year from the date of the corrections. The Commission also permitted an immediate one hundred percent of the increase for those tenants who refused access for an inspection by the Health District.
Since the Commission did not suspend the rental payments, there was not any need to mandate payment to them to be held in escrow.
MEETING OF JUNE 30
C.G.S. 7-148b and Town Code § 12-37 permitted the Commission to review and amend any of its orders and decisions. The meeting of June 30, 1999, was held to clarify the decision and order of March 9, 1999. This meeting was in response to the letter from the tenants dated June 7, 1999. The letter indicated some disagreement between the plaintiff/landlord and the tenants as to the amount of the rental increase that had been approved. The only matter reviewed at the meeting was what amount had been approved for the rental increase. No new evidence was presented. The Commission, therefore, acted within its authority.
 CONCLUSION
The plaintiff failed to demonstrate that the Commission had acted in an arbitrary and capricious manner and had abused its discretion. The court finds that the record reasonably supports the decision and order of the Commission. The Commission reasonably and fairly exercised its discretion after a full hearing.
For the above reasons the plaintiff's appeal is denied.
Crawford, J.