[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 History
Before the court is the plaintiffs December 7, 2000 appeal from the defendant New Haven plan commission's (commission) denial of a site plan review, including coastal site plan review and soil erosion and sediment control review for grading and filling a 4.6 acres portion of a 20 acre site in an IL (light industrial) zone (the application) filed by the plaintiff, Grannis Island Company, Inc. (Grannis). Grannis appeals from the November 15, 2000 decision of the commission to deny Grannis' plan to regrade and fill 4.6 acres[1] at the north central boundary of its 20 acre undeveloped property off Quinnipiac Avenue in New Haven, Connecticut (the subject property). (Return of Record [ROB], Exhibit 2: application). The subject property is located to the east of the confluence of the Quinnipiac and Little Rivers, south of the Amtrak main line, is bordered on the east and southeast by property owned by the New Haven Land Trust and on the west and northwest by property owned by Gannett Outdoor Company. (ROR, Exhibit 2: application; ROR, Exhibits 45-47, topographic maps.)
Grannis commenced this appeal on December 5, 2000, by service of process on Susan L. Voight, chairperson of the commission, and on the city clerk. (Sheriffs Return.) Grannis filed this appeal with the court on December 7, 2000. The commission filed its answer on February 22, 2001 and return of record on February 26, 2001. On March 26, 2001, Grannis filed its brief and the commission filed its brief on April 30, 2001. Grannis filed a reply brief on May 29, 2001. The appeal was heard by the circuit, Booth, J., on January 7, 2002. CT Page 695
 Facts
In its appeal, Grannis alleges the following facts. Grannis is a Connecticut corporation that owns the subject property. (Appeal, ¶ 1.) On September 28, 2000, Grannis applied to the commission for a site plan, soil erosion and sediment plan review, and coastal site plan review, seeking permission to regrade and fill an area of approximately 4.6 acres of upland on the subject property. (Appeal, ¶ 3.)
In 1993, New Haven adopted its soil erosion and sediment control regulations; (ROW Exhibit 19: soil erosion and sediment control regulations); which requires a permit be obtained from the commission for a building, use or structure when the site of such development is one-half acre or more, or when, in the course of development, more than thirty percent of the total area will be regraded by more than two feet or more than 800 cubic yards of soil and rock will be moved, removed or added, unless exempted by the regulation. (ROR, Exhibit 19: soil erosion and sediment control regulations, §§ 3.1, 3.2.) Because Grannis calculated that approximately 8, 500 cubic yards of fill would be regraded, of which approximately 3, 650 cubic yards of fill would be brought in from off site, it was required to apply for a soil erosion and sediment control permit in accordance with the regulations. (ROR, Exhibit 2: application.)
Furthermore, as part of the Connecticut coastal area, as defined in General Statutes § 22a-94,[2] New Haven has adopted a municipal coastal program, in accordance with General Statutes § 22a-101.[3]
(ROR, Exhibit 17: New Haven Zoning Ordinance, § 55: Coastal Management District.) This section of the New Haven zoning ordinance requires a coastal site plan review by the commission for all buildings, structures, uses or activities to be located within the coastal management district. (ROR, Exhibit 17, New Haven Zoning Ordinance, § 55, page 55-1, Summary of Review Process.) Because the subject property falls within the coastal management zone, Grannis' application is subject to the coastal site plan review by the commission. (ROR, Exhibit 2: application.)
Grannis' decision to regrade 4.6 acres of the subject property was precipitated by the conveyance of the adjacent property by the New Haven Regional Water Authority to the New Haven Land Trust. (ROR, Exhibit 2: application.) Grannis stored construction materials on the adjacent property with the New Haven Water Authority's permission. (ROR, Exhibit 2: application.) The New Haven Land Trust requested, however, that Grannis remove the material currently stored on its property. (ROR, Exhibit 2: application.) Grannis seeks to regrade the 4.6 acres of the subject property to level the area currently used for storage on the CT Page 696 subject property and clearly define that portion of the site to be used for outdoor storage, so that the materials can be stored in a more orderly fashion until they can be reused. (ROR, Exhibit 2: application.)[4]
On October 18, 2000, a public hearing was scheduled on Grannis' application,[5] which was continued to November 15, 2000. (ROR, Items 7 and 8: Meeting Notices; ROR, Items 9 and 10: Legal Notices.)[6] After the public hearing closed on November 15, 2000, the commission voted to deny Grannis' application. (ROR, Item 26: Site Plan Review Decision.) Grannis alleges, and the commission admits, that the commission published its decision to deny the application on November 22, 2000. (Complaint, ¶ 9; Answer, ¶ 9.)
 Jurisdiction
General Statutes § 8-8 governs an appeal from the decision of a planning commission to the Superior Court.[7] "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Bridgeport Bowl-O-Ramma v. Zoning Board of Appeals,195 Conn. 276, 283, 487 A.2d 559 (1985).
A. Aggrievement
Pleading and proof of aggrievement is a prerequisite to the trial court's jurisdiction over the subject matter of a plaintiffs appeal from an administrative agency's decision, Jolly, Inc. v. Zoning Board ofAppeals, 237 Conn. 184, 192, 676 A.2d 831 (1996). In the present case, Grannis alleges aggrievement, claiming that it owns the subject property, for which the commission denied the application. (Appeal, ¶¶ 1, 18.) An owner of the subject property is aggrieved and entitled to bring an appeal. Winchester Woods Associates v. Planning ZoningCommission, 219 Conn. 303, 308, 592 A.2d 953 (1991). At the hearing on January 7, 2002, the plaintiffs president testified that the plaintiff owned the property in question. Plaintiff certified copies of Ex. 1, a deed, and Ex. 2, a certificate of corporate name change supported this testimony.
B. Timeliness and Service of Process
General Statutes § 8-8 (b) provides, in part, that an "appeal shall be commenced by service of process in accordance with [subsection] (e) . . . of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) provides that service "shall be made by leaving a true and attested CT Page 697 copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
Grannis commenced this appeal by serving process on Susan L. Voight, the chairperson of the commission, and Stanley Rogers, city clerk, on December 5, 2000, which is less than fifteen days after notice of the commission's decision was published on November 22, 2000. This appeal, therefore, is timely and the proper parties were served, pursuant to General Statutes §§ 8-8 (b), (e), 22a-109 (f).
 Scope/Standard of Judicial Review
"Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of its legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." (Brackets omitted; internal quotation marks omitted.) Irwin v. Planning Zoning Commission, 244 Conn. 619, 627, 711 A.2d 675 (1998). "In reviewing an appeal from an administrative agency, the trial court must determine whether the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." (Internal quotation marks omitted.) Smith v.Zoning Board of Appeals, 227 Conn. 71, 80, 629 A.2d 1089, cert. denied,510 U.S. 1164, 114 S.Ct. 1190, 127 L.Ed.2d 540 (1993).
"Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals,233 Conn. 198, 206, 658 A.2d 559 (1995). "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) Id.
"The power of the commission to require that [an applicant] file a coastal site plan and impose conditions on its approval is derived from the Coastal Management Act . . . General Statutes §§ 22a-90 through22a-112. The act delegates the administration of the state-wide policy of planned coastal development to local agencies charged with responsibility for zoning and planning decisions. See General Statutes §§ 22a-105,22a-106. The act envisages a single review process, during which proposals for development within the coastal boundary will simultaneously be reviewed for compliance with local zoning requirements and for consistency with the policies of planned coastal management." (Internal quotation marks omitted.) DeBeradinis v. Zoning Commission, 228 Conn. 187,195-96, 635 A.2d 1220 (1994). CT Page 698
"With respect to review of a coastal site plan, [p]roceedings before planning and zoning commissions are classified as administrative. . . . Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached. . . . The action of the commission should be sustained if even one of the stated reasons is sufficient to support it. . . . The evidence, however, to support any such reason must be substantial. . . ." (Citations omitted; internal quotation marks omitted.) Id., 198-99.
 Discussion
In its appeal brief, Grannis says that the site of the proposed activity is 500 feet from the Quinnipiac River and that, because of the terrain and nature of the site, access to the river through the site is extremely difficult. (Grannis' Brief, page 6.) Grannis further states that there is no water dependent use on the subject property,[8] that there would be no adverse impact on any current or future water dependent use, development, opportunities or activities,[9] and that Grannis is not proposing a new use or change in use. (Grannis' Brief page 6.) According to Grannis, there is not substantial evidence in the record to support the commission s denial of its application. Rather, Grannis contends, the commission "would like Grannis to donate the subject property for open space use," and denied Grannis' application so that Grannis would donate the property to the New Haven Land Trust. (Grannis Brief, page 10.) Such action by the commission, Grannis contends, is arbitrary, illegal and an abuse of the commission's discretion.
General Statutes §§ 22a-105 and 22a-106 govern the commission s review of Grannis' application. DeBeradinis v. Zoning Commission, supra,228 Conn. 195-96. Section 22a-105 provides; in relevant part, that "a coastal site plan shall include a plan showing the location and spatial relationship of coastal resources on and contiguous to the site; a description of the entire project with appropriate plans, indicating project location, design, timing, and methods of construction; an assessment of the capability of the resources to accommodate the proposed use; an assessment of the suitability of the project for the proposed site; an evaluation of the potential beneficial and adverse impacts of the project and a description of proposed methods to mitigate adverse effects on coastal resources." General Statutes § 22a-105 (c).
The commission formally stated its reason for denying Grannis site plan applications. (ROR, Exhibit 26: Action on Site Plan Review.)[10] "Where CT Page 699 a zoning commission has. formally stated the reasons for its decision, the court should not go behind that official collective statement of the commission." (Brackets omitted; internal quotation marks omitted.) WestHartford Interfaith Coalition, Inc. v. Town Council, 228 Conn. 498,514-15, 636 A.2d 1342 (1994). The commission found that "[i]nsufficient information has been presented with the application to evaluate the spatial relationships between on-site tidal wetlands and the area proposed to be filled and regraded." (ROR, Exhibit 26: Action on Site Plan Review, page 7.) At the hearing on Grannis' applications, Grannis' counsel addressed some of the issues raised in the city's staff report. He noted that a concern was raised about the boundaries for the area and stated that Grannis believed that the actual slope was good enough, but that they were amenable to some type of marker, even though they didn't propose markers because they wanted to minimize visual impacts. (ROR, Exhibit 12: Transcript of October 18, 2000 hearing, page 14.)
At the continuation of the public hearing on November 15, 2000, the city's planner discussed a letter received by the commission from the Connecticut department of environmental protection (DEP), in which it was determined that DEP could not define the tidal wetland boundary on site, nor could the commission find the boundary defined on Grannis' plan. (ROR, Exhibit 14: DEP review; ROR, Exhibit 12: Transcript of November 18, 2000 hearing, page 3.)[11] In response to the concerns raised at the hearing and in the DEP's review letter, Grannis responded that it had gone to DEP a year prior to submitting its application with the city and was given a tidal wetlands map from 1970 and disputed the DEP's conclusion that the subject property is a waterfront site. (ROR, Exhibit 12: Transcript of November 18, 2000 hearing, page 10.) Grannis also presented testimony from its expert soils scientist, Henry Moeller, who discussed the wetlands surrounding the subject property and their boundaries. (ROR, Exhibit 12; Transcript of November 18, 2000 hearing, pages 15-19.) Mr. Moeller stated that, when DEP talks about elevation seven in their letter as the boundary for the tidal wetlands, they are talking about a one-year storm event and "this type of criteria is just simply not possible to map out in the field or actually observe the differences because it is . . . if happens once a year, it's really a very rare event and thus, you are not going to have much field evidence to indicate what happens once a year or even like once every two years." (ROR Exhibit 12: Transcript of November 15, 2000 hearing, pages 18-19.)
The DEP letter and testimony of Grannis' soils expert show that there is substantial evidence in the record to support the commission's finding that it is unclear to the commission, as well as to Grannis and to DEP, where the spatial relationships between onsite tidal wetlands and the area proposed to be filled and regraded. CT Page 700
The commission also addressed the description of the entire project with appropriate plans, indicating project location, design, timing, and methods of construction. (ROR, Exhibit 26: Action on Site Plan Review.) Although Grannis states in its submittal letter accompanying its application that "silt fences will be placed at the bottom of all slopes, and that the applicant will grade all slopes at a rate of 3' horizontal to 1' vertical and seed all slopes" and that "there is a 500' long anti-tracking pad at the street face with an asphalt connection to Quinnipiac Avenue," these erosion and sediment control measures are not shown on the plan. (ROR, Exhibit 26: Action on Site Plan Review, page 4.) Grannis discussed its plan for sedimentation and erosion control at the public hearing on its application; (ROR, Exhibit 12: Transcript of October 18, 2000 hearing, pages 13-14); but fails to offer further elaboration of where the measures will be located. Thus, it was reasonable for the commission to find that Grannis' application lacked sufficient information about location, design, timing, and methods of construction for the regrading and fill project.
During the public hearing on its application, Grannis maintained that it did not propose to change the use of the property in any manner and that there would, therefore, be no adverse, nor positive impact on water-dependent uses because there would be no change in use. (ROR, Exhibit 12: Transcript of November 15, 2000 hearing, page 10.) In denying Grannis' application, the commission found that "the primary potential short-term adverse impact is runoff into the adjacent wetlands as a result of the filling," and that a soil erosion control plan was not part of the submission. (ROR, Exhibit 26: Action on Site Plan Review, pages 5-6.) The commission also found that Grannis failed to address the following impacts of its proposal: siltation into the tidal marsh and abutting rivers, which, in turn, would threaten such species as the Eastern Oyster; impact of the failure of the proposed slopes at the edge of the fill/regraded area; periodic flooding of stored materials; stormwater runoff from materials to onsite tidal creeks and the Qumnnipiac River. (ROR, Exhibit 26: Action on Site Plan Review, page 6.)
The commission noted that Grannis did state at the public hearing that it would cover the stored materials that could leach pollutants into the soil and that stormwater best management practices would be used. (ROR, Exhibit 26: Action on Site Plan Review, page 6; ROR, Exhibit 12: Transcript of November 15, 2000 hearing, page 14.) Based on the record, it was reasonable for the commission to find that Grannis failed to. identify and address mitigation of all potential adverse impacts of its proposal.
Grannis surmised that the beneficial impact of its proposal to regrade and fill the subject property would be reorganization of the items stored CT Page 701 on the property and should improve the visual impact of the site. (ROR, Exhibit 12: Transcript of October 18, 2000 hearing, page 17.) The commission agreed that reorganization of the items stored on the property and improved visual impact would be beneficial impacts resulting from the applications. (ROR, Exhibit 26: Action on Site Plan Review, page 6.)
In reviewing a coastal site plan application, the commission is also required to apply the criteria and process for action on coastal site plans contained in General Statutes § 22a-106.[12] The commission found that the proposed regrading and filling of the subject property and subsequent storage of construction materials is inconsistent with the legislative goals and policies of the Connecticut Coastal Management Act. (ROR, Exhibit 26: Action on Site Plan Review, page 7.) As discussed previously, the commission found that insufficient information was presented with the application to evaluate the spatial relationships between onsite tidal wetlands and the area proposed to be filled and regraded. This finding is supported by the record, as more fully discussed above.
The commission also found that "[a]dditional information is required to demonstrate that potential adverse impacts to coastal water quality from the proposed use have been minimized to a level acceptable to the Commission and the standards of the Connecticut Coastal Management Act." (ROR, Exhibit 26: Action on Site Plan Review, page 7.) The basis for this finding is the DEP's review of the proposed site plan. (ROR, Exhibit 14: DEP review.) Grannis cites New Haven Terminal v. New Haven Zoning Board, Superior Court, judicial district of New Haven at New Haven, Docket No. 332078 (November 5, 1992, Licari, J.) in support of its assertion that the record fails to support the commission's finding regarding the adverse impacts. In the New Haven Terminal case, the plaintiff appealed the New Haven zoning board of appeals' denial of its application for a special exception permit for a scrap metal junkyard. Id. In that case, the court reviewed testimony given by neighbors of the proposed junkyard, who speculated about the type of environmental impact such a facility would have. Id. The court found that the zoning board based its denial on the neighbors' unsubstantiated concerns, rather than on evidence that such environmental impacts had the potential to occur. Id. The court found, instead, that "the New Haven City Plan Commission is required by General Statutes § 22a-92 to take into consideration such environmental impacts when they considered the plaintiffs application for coastal site plan review, and it recommended that the application for special exception should be granted." Id. Thus, the court held that "[i]nnuendos and suspicions are no substitute for real evidence and since there is no affirmative evidence in the record showing any adverse environmental impact, the defendant's first reason is not reasonably supported by the record." Id. CT Page 702
The New Haven Terminal case can be distinguished, however, from Grannis' appeal. There, the zoning board relied on the speculative testimony of neighbors. In denying Grannis' applications, the commission could have reasonably relied on the DEP's review of the applications in which it found that "[t]he coastal site plan does not indicate how stockpiles of construction material will be contained to prevent stormwater from washing stored materials, or leaching water quality contaminants from these materials, off-site into adjacent tidal creeks and wetlands. Coastal water quality degradation from polluted stormwater discharges from the site will to a great extent depend on the types of materials to be stored on-site. However, little information is provided describing the types of materials which could be stored there." (ROR, Exhibit 14: DEP review, page 4.) General Statutes § 22a-106 (c) requires a person submitting a coastal site plan to "demonstrate that the adverse impacts of the proposed activity are acceptable and shall demonstrate that such activity is consistent with the goals and policies in section 22a-92." The commission denied Grannis' plan because it failed to provide adequate information to allow the commission to find that the proposed regrading and fill of the subject property is consistent with the goals and policies of General Statutes § 22a-92.[13] Without the information, neither the commission nor the DEP could find that Grannis' proposal was consistent with the legislative goals and policies of the Connecticut Coastal Management Act.
As to Grannis' contention that the commission denied Grannis' application so that Grannis would donate the property to the New Haven Land Trust, the commission made the following findings. "[A] petition has been submitted to the Board of Aldermen requesting the City Plan Commission to prepare Zoning Ordinance Amendments establishing an Open Space Designation and Map Amendments establishing Open Space Zones no later than November 1, 2000." (Internal quotation marks omitted.) (ROR, Exhibit 26: Action on Site Plan Review, page 3.) The commission further notes that the ordinance amendment is already in process. (ROR, Exhibit 26: Action on Site Plan Review, page 4.) The commission found that the subject property is noted on the future land use map as "open space,"[14]
but further recognizes that, should the parcel be rezoned to the open space designation, the storage area would become a nonconforming use." (ROR, Exhibit 26: Action on Site Plan Review, page 6.) Finally, the commission states that it has supported acquisition of lands in the area by such entities as the New Haven Land Trust maintenance of the area as open space is consistent with the city's future land use plan. (ROR, Exhibit 26: Action on Site Plan Review, page 7.)
While these findings and comments could lead to the conclusion drawn by Grannis about the commission's motives for denying its application, such CT Page 703 a conclusion is not as reasonable as a finding that the commission was identifying conflicts between the proposed activity and any goal or policy contained in General Statutes § 22a-92,[15] as the commission is required to do under § 22a-106 (b)(3).
Accordingly, it is submitted that the court find that record supports the commission's denial of Grannis' applications. See DeBeradinis v.Zoning Commission, supra, 228 Conn. 198-99 ("[t]he action of the commission should be sustained if even one of the stated reasons is sufficient to support it").
 CONCLUSION
For the reasons set forth above, the court denies the plaintiffs appeal from the defendant commission's decision to deny the plaintiffs soil erosion and sediment control plan and its coastal site plan applications because the record supports the commission s stated reasons for denying the applications. Specifically, the commission denied the applications because there was not enough information provided by Grannis to allow the commission to make the findings it is required to make pursuant to General Statutes §§ 22a-105 and 22a-106, as more fully set forth in this opinion.
 ___________________ Kevin E. Booth, Judge